Filed 10/1/14  P. v. Lopez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B247047 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA071969) |
| v. | |
| CARLOS ALEXANDER LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Harvey Giss, Judge.  Affirmed.

Charles Greg Lester for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Carlos Alexander Lopez (defendant) appeals from his conviction of continuous sexual abuse a child under the age of 14 years. He contends that the trial judge engaged in misconduct and erred in denying his motions for mistrial and judicial disqualification. Finding defendant's claims of error forfeited, without merit, and nonprejudicial, we affirm the judgment.

## BACKGROUND

**Procedural history**

Defendant was charged with one count of with continuous sexual abuse of V. M. (V.), a child under the age of 14 years in violation of Penal Code section 288.5, subdivision (a),[1] nine counts of committing lewd acts on a child under the age of 14 years in violation of section 288, subdivision (a), and seven counts of oral copulation with a child under 14 years of age in violation of section 288a, subdivision (c)(1). Prior to the matter being submitted to the jury, the trial court dismissed all but the first count. The jury found defendant guilty of continuous sexual abuse as charged in count 1.

On February 19, 2013, the trial court sentenced defendant to the middle term of 12 years in prison, awarded presentence custody credit totaling 440 days, and ordered defendant to pay mandatory fines and fees, to register as a sex offender upon release, and to submit to required HIV testing. Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

V. was 13 years old in 2011 at the time she was abused by defendant, her mother's then boyfriend and father of V.'s younger sister. V. was a reluctant witness at trial who testified that her prior reports of sexual abuse and her preliminary hearing testimony were false, and that defendant had never had sexual relations with her. As a result, much of her preliminary hearing testimony was read into the record as prior inconsistent statements.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

At the preliminary hearing V. testified that at a relative's home in March 2011, while she was lying in bed watching television with her younger sister sleeping nearby, defendant came into the room and kissed her on the mouth twice. In April 2011, there were two occasions when she placed her mouth on defendant's penis. On one of these times, after a few minutes defendant said in Spanish, "Me va a venir," and then ran to the bathroom. V. understood him to say that he was going to "come" or "throw sperm on his penis." Sometime after that, defendant twice inserted his penis into V.'s vagina, but did not ejaculate. On three occasions during the summer 2011, while V. was staying with her mother's friend Luz Silva (Silva), defendant picked her up and took her to his sister's house, where they had sexual intercourse and V. orally copulated defendant. In November 2011, defendant picked up V. from Silva's house and took her to a hotel where they had sexual intercourse and V. orally copulated defendant. As before, defendant said he was going to come and went to the bathroom. Upon V.'s return to Silva's house following this incident, she told Silva all that had happened.

Silva informed V.'s mother, Laura Rocha (Rocha), who told another friend, who notified the police. Los Angeles Police Department (LAPD) Officers Jeshua Munoz and Danielle Lamoureux questioned V. and Rocha at Rocha's house. V. told Officer Lamoureux that in March 2011, defendant kissed her while she was in bed watching television with her sleeping sister. She also told the officer that defendant put his penis in her mouth and it was "gross," so she washed her mouth afterward. V. told the officer that she had orally copulated defendant three times at his sister's house and that they had sexual intercourse at a motel.

The officers took V. and the other children in the home into protective custody. Rocha and other relatives followed them to the police station. Sometime later, when defendant arrived at the station he said to Officer Munoz in Spanish, "Your violator is here." Defendant agreed to speak to the officers after he was advised and waived his *Miranda*[2] rights. Defendant admitted that he had twice engaged in oral copulation with

---

[2]     See *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445.

V. Defendant also admitted that he had sexual intercourse with her at a hotel, and said that he stopped each time to masturbate in the bathroom because he was embarrassed to ejaculate in her presence. The investigation was then turned over to detectives.

A recording of Detectives Anthony Washington and Mark Leon's interview of defendant after his arrest was played for the jury. Defendant admitted that V. had sucked his penis twice during that year, but claimed they had sex only once, in a hotel. Defendant knew that V. was 13 years old at the time. Defendant told the detectives that though he had penetrated her vagina two times at the hotel, he did not go all the way because he became scared and did not want to continue.

The results of a sexual assault examination of V. were inconclusive. There was no evidence of injuries to the hymen, past or present. Since V. had already reached puberty, the exam did not confirm whether or not sexual intercourse had taken place.

**Defense evidence**

Defendant testified that his admissions to the detectives were all false. He claimed that before turning on the recorder, the detectives woke him up, took him from his cell to another room, threatened him with life in prison and deportation of his family, and promised that he would serve only one year in jail if he confessed to everything in the police report prepared by Officers Lamoureux and Munoz. He denied making any statements to Officers Lamoureux and Munoz, and denied engaging in any unlawful sex, oral copulation, or lewd act with V.

**Rebuttal**

Detective Washington testified that neither he nor Detective Leon went to defendant's cell, and instead requested an interview and waited until a jailer brought defendant to the interview room. There was no conversation before the recorder was turned on, and the detectives made no threats or promises to defendant. The detectives did not know defendant's immigration status, and LAPD policy prohibited them from asking about it. When the interview was over, the jailer took defendant back to his cell.

**DISCUSSION**

4

## I.  Timing and manner of midtrial jury instruction[3]

Defendant assigns error to the court's reading of CALCRIM No. 318 before V. left the witness stand, rather than waiting until final instructions.  Defendant also complains of the manner in which the court read the instruction.

After the prosecutor went back and forth several times between directly questioning V. and reading her preliminary hearing testimony, the court instructed the jury:  "You have heard evidence of statements that a witness made before the trial.  If you decide that the witness made those statements you may use those statements in two ways:  one, to evaluate whether the witness'[s] testimony in court today is believable; and, two, as evidence that the information in those earlier statements is true."

Defendant contends that "the trial judge conveyed to the jury that he disbelieved critical defense testimony when he irritatedly interrupted the testimony of the alleged victim, [V.], while being cross-examined by the prosecution by *sua sponte* reading the jury instruction for prior inconsistent testimony."  Defendant also contends that the trial judge's "tone of voice was judgmental and condescending when he read the jury instruction and later announced the date and name of the judge who heard her prior inconsistent testimony, thus insinuating the victim was lying and was to be disbelieved."  Defendant characterizes the judge's questioning as "badger[ing] [the] witness in an . . . angry and agitated voice."

Initially we observe that V. was a prosecution witness and the challenged questioning took place during direct examination.  We also note the absence in the record of many of defendant's characterizations of the judge's tone of voice and mood.  The day after the instruction was read, defense counsel stated that the judge had raised his voice and his tone was angry when he read the instruction.  The only other discussion of the judge's tone and mood in the record are found in defense counsel's argument and

---

[3]  In his brief, defendant separates his claims of judicial misconduct into two assignments of error:  (1) the timing and manner of the court's reading of CALCRIM No. 318 and (2) the examination of Virgen.  However, defendant comingles his discussion of the two issues.  We attempt to discuss them separately.

declaration in support his recusal and mistrial motions the following day, along with the judge's response during the hearing on the motions. Defense counsel observed that after V. repeated her recantation several times, the judge became "agitated" and read the instruction in an "angry tone of voice." There were no other declarations or statements in the record by anyone else who was in court at that time. The judge denied that he was angry or hostile toward the witness, raised his voice, or made facial gestures. He explained to counsel that he simply had a gravelly voice due to a cold and a sore throat.

Other than defense counsel's opinion that the judge raised his voice, sounded angry, and appeared agitated when he read the instruction, defendant's many characterizations of the judge's tone and mood are matters outside the record which cannot be reviewed on appeal. (See *People v. Sakelaris* (1957) 151 Cal.App.2d 758, 758-759.) The judge explained the tone of his voice, and we are presented with no evidence that his explanation was inaccurate.

As to the timing of the instruction, the court told counsel that the prosecutor's questions had not been in proper form for eliciting inconsistent statements, and explained that the jury was entitled to know at that time why the preliminary hearing testimony was being read. We have reviewed all of V.'s testimony and agree that without some explanation, the procedure might have been confusing to the jury. Defendant does not contend that CALCRIM No. 318 is an incorrect statement of law, or that the timing of the instruction would have been error absent the alleged tone of the judge's voice. As defendant cites no authority for the position that the timing of the reading of the instruction would have been error absent the improper manner in which it was read, we determine this assignment of error to be insufficiently developed for review. (See *People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19.)

## II.  Court's examination of prosecution witness

Defendant contends that the court's questioning of V. created the impression that the judge was aligned with the prosecution, that he believed that the victim was lying when she recanted her prior reports and preliminary hearing testimony, and that the court believed defendant was guilty.

Defendant cites two instances in which the trial court interrupted the prosecutor's examination of V. to question her about previously testifying or reporting falsely that she had been sexually abused by defendant.  In the first instance, the court asked V. why she testified as she did at preliminary hearing.  When V. replied that she hated defendant because he always made her mother cry, the court asked, "So you thought you were going to frame him?"  V. said "Yes," and the court asked whether anyone had given her a reason not to testify after the preliminary hearing.  V. responded "No."  In the second instance, the court asked V. what caused her change of heart after the preliminary hearing, to which V. replied it was not fair for defendant to go to jail because it was her fault.  The court asked whether "her fault" meant that she felt guilty about having sex with defendant or whether she felt guilty about making the whole thing up.  V. said, "Because I made this whole thing up."

The trial court has a statutory duty to control trial proceedings, to see that justice is done, and to bring out facts relevant to the jury's determination "as effective for the ascertainment of the truth."  (Evid. Code, § 765, subd. (a); *People v. Sturm* (2006) 37 Cal.4th 1218, 1237; Pen. Code, § 1044.)  To this end, "[a] trial court has both the discretion and the duty to ask questions of witnesses, provided this is done in an effort to elicit material facts or to clarify confusing or unclear testimony.  [Citations.]"  (*People v. Cook* (2006) 39 Cal.4th 566, 597 (*Cook*).)  "The court may not, however, assume the role of either the prosecution or of the defense.  [Citation.]  The court's questioning must be "'temperate, nonargumentative, and scrupulously fair'" [citation], and it must not convey to the jury the court's opinion of the witness's credibility.  [Citation.]"  (*Ibid.*)

The record reveals no objection to any of the challenged questions, and no objection to the court's overall conduct until defendant filed recusal and mistrial motions

7

the following day. As defendant failed to make timely and specific objections to the court's questions, he has failed to preserve for review his contention that they were improper. (*Cook, supra*, 39 Cal.4th at p. 598; Evid. Code, § 353.) Further, defendant's failure to request a curative instruction forfeits the issue. (*People v. Cash* (2002) 28 Cal.4th 703, 730.)

Defendant contends that any objection would have been futile, as evidenced by the discussion regarding the mistrial and recusal motions. "[A] failure to object to judicial misconduct does not preclude appellate review when an objection could not have cured the prejudice or would have been futile. [Citation.]" For example, an objection may be deemed futile where the trial court has made numerous, extensive disparaging remarks and the hostility between the trial court and defense counsel was evident. (*People v. Houston* (2012) 54 Cal.4th 1186, 1220, citing *People v. Sturm, supra*, 37 Cal.4th at pp. 1233-1236.) However, defendant cites no disparaging remarks made to defense counsel in the jury's presence, and defendant's claim that the judge expressed hostility toward the witness is not borne out by the record, as we have previously concluded. Had defendant asked the judge at the appropriate time to inform the jury that he had a cold and sore throat, and to admonish the jury not to infer bias or the court's opinion about the credibility of any witness, any prejudicial effect of the examination of V. would have been dispelled. Since defendant failed to object and request an admonition, his claim of judicial misconduct has not been preserved for review. (See *People v. Houston, supra*, at p. 1220.)

Moreover, a defendant seeking reversal due to alleged judicial misconduct must establish prejudice (*People v. Abel* (2012) 53 Cal.4th 891, 914) which defendant has failed to do here. Defendant's entire argument concerning prejudice appears to be that the trial court's questions and demeanor implied that V. was lying when she testified at trial but telling the truth at the preliminary hearing, thus damaging a critical defense theory. Prejudice must be determined by considering all the surrounding circumstances, not simply a determination that ""the trial judge's conduct left something to be desired, or even [that] some comments would have been better left unsaid. Rather, we must

8

determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.'" [Citation.]" (*Ibid*.) Prejudice is established only when it is reasonably probable the jury would have reached a different verdict had the court refrained from asking the challenged questions. (*People v. Harris* (2005) 37 Cal.4th 310, 350-351, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) We conclude from our review of the whole record that a different verdict was not reasonably probable.

Quite apart from the questions the court asked, there was ample evidence throughout the trial that V. had told the truth at the preliminary hearing, but not at trial. Several witnesses testified regarding V.'s prior reports of sexual abuse which were consistent with her preliminary hearing testimony about the abuse: Officer Lamoureux, a victim advocate, the nurse practitioner who conducted a forensic medical examination, and V.'s mother. It was also clear from V.'s response to the prosecutor's questions, her preliminary hearing testimony and the testimony of other witnesses, that V. recanted not because she had lied, but because she regretted the consequences to her family and her relationship with them: V. testified that she did not want her sister to grow up with a father in prison, as she had; Tracey Ruby, the victim advocate, testified that V. told her before the preliminary hearing that she did not want to testify because she felt sorry for the defendant, was worried about her sister, her mother, and her grandmother, and she felt responsible. Nurse practitioner Diana Perez-Nunez testified that V. told her that Rocha became angry when she was told of the abuse.

Further, defendant's admissions corroborated V.'s preliminary hearing testimony. Defendant turned himself in to the police saying, "Your violator is here," and before his interview with Detectives Washington and Leon, he told Officer Munoz that he had engaged in oral copulation with V. and had sexual intercourse with her twice at a hotel. Defendant's admission that he masturbated in the bathroom after intercourse because he was embarrassed to ejaculate in front of V. was a specific fact consistent with V.'s preliminary hearing testimony that defendant went to the bathroom after saying he was going to come.

9

Thus, even if the court had not questioned V. at all, it is unlikely that the jurors would have believed her recantation. In any event, any prejudice was dispelled by the court's instructions. In final instructions, among other standard instructions regarding the evaluation of testimony, the court instructed the jury: "You alone must judge the credibility or believability of the witnesses"; and, "Do not take anything I said or did during the trial as an indication of what I think about the facts, the witnesses or what your verdict should be." We presume that the jurors understood the instructions and followed them. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

## III. Denial of mistrial and recusal motions

### A. Recusal motion

Defendant contends that the trial court abused its discretion in denying the defense motions for mistrial and to disqualify the judge, based on the alleged judicial misconduct discussed above. Defendant did not state the authority for his recusal motion in the trial court. Here, for the first time on appeal, defendant invokes his federal constitutional right to due process as a ground for disqualification. As respondent notes, the denial of a statutory motion for disqualification is not subject to appeal, but must be reviewed by way of petition for writ of mandate. (See Code Civ. Proc., § 170.3, subd. (d).) In addition, as the motion was not made on constitutional grounds in the trial court, defendant has not preserved the issue for review as a nonstatuory motion. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49-50.)

### B. Mistrial motion

Defendant contends that the motion for mistrial should have been granted due to the actual or apparent judicial bias caused by the judge's alleged misconduct. A trial court is vested with considerable discretion in ruling on a motion for mistrial, which should be granted only if the trial court finds that the defendant's chances of receiving a fair trial have been irreparably damaged. (*People v. Dement* (2011) 53 Cal.4th 1, 39.) As we have already rejected defendant's claim of judicial misconduct and have found no prejudice, we also find no abuse of discretion.

10

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

CHAVEZ

We concur:


_____, P. J.

BOREN


_____, J.

HOFFSTADT